**2013 IL 112116**

**IN THE**
**SUPREME COURT**
**OF**
**THE STATE OF ILLINOIS**

<hr>

(Docket No. 112116)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ALBERTO AGUILAR, Appellant.

*Opinion filed September 12, 2013.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.
Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1   The principal issue in this case is whether section 24-1.6(a)(1), (a)(3)(A) of the Illinois aggravated unlawful use of weapons (AUUW) statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)) violates the right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution (U.S. Const., amend. II). We hold that it does.

¶ 2                            BACKGROUND

¶ 3   The facts are not in dispute. Officer Thomas Harris of the Chicago police department testified that, on the evening of June 12, 2008, he was on surveillance duty near 4217 West 25th Place. Officer Harris observed a group of male teenagers screaming, making gestures, and throwing bottles at passing vehicles. This group included defendant,

who Officer Harris noticed was holding the right side of his waist area. After watching the group walk into a nearby alley, Officer Harris radioed other officers who were nearby.

¶ 4 Officer John Dolan testified that, after receiving a radio communication from Officer Harris, he and Officers Wagner and Triantafillo traveled to 4217 West 25th Place. Once there, Officer Dolan watched several individuals walk into the backyard. The officers followed, and Officer Dolan heard defendant yell an expletive. Officer Dolan then saw that defendant had a gun in his right hand. Defendant dropped the gun to the ground, and Officer Dolan took defendant into custody while another officer recovered the gun. When Officer Dolan examined the gun, he saw that the serial number had been scratched off and that it was loaded with three live rounds of ammunition. Officer Dolan learned later that defendant did not live at 4217 West 25th Place.

¶ 5 Defense witness Romero Diaz testified that he lived at 4217 West 25th Place and that defendant was his friend. Diaz explained that, on the evening in question, he was with defendant and another friend in his backyard waiting for defendant's mother to pick up defendant, when three or four police officers entered the backyard with flashlights and ordered him and his friends to the ground. When defendant hesitated to comply, one of the officers tackled him to the ground. According to Diaz, defendant did not have a gun and did not drop a gun to the ground when the officers entered the backyard.

¶ 6 Defendant testified that, on the night of June 12, 2008, he was with friends at the corner of 26th Street and Keeler Avenue. After spending about 45 minutes there, he and another friend walked to Diaz's backyard. While defendant was waiting there for his mother to pick him up, three police officers entered the yard with flashlights and guns drawn. One officer yelled at defendant to get on the ground, and when defendant moved slowly, another of the officers tackled defendant. The officers then searched the yard, showed defendant a gun, and accused him of dropping it. Defendant denied ever having a gun that evening, and he denied dropping a gun to the ground.

¶ 7 After weighing the credibility of the witnesses, the trial court found defendant guilty of AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)) and unlawful possession of a firearm (UPF) (720 ILCS 5/24-3.1(a)(1) (West 2008)). The trial court sentenced defendant to

24 months' probation for the AUUW conviction and did not impose sentence on the UPF conviction.

¶ 8   Defendant appealed, and the appellate court affirmed with one justice dissenting. 408 Ill. App. 3d 136. We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).[1]

¶ 9                            DISCUSSION
¶ 10                             Standing
¶ 11   In this case, we are asked to decide whether the two statutes under which defendant stands convicted—namely, section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute and section 24-3.1(a)(1) of the UPF statute—violate the right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution. Before we get to those questions, however, we must quickly dispose of the State's argument that defendant lacks standing to contest the constitutionality of these statutes. In support of this argument, the State invokes the familiar principle that, in order to have standing to contest the constitutionality of a statutory provision, the party bringing that challenge must show that he falls within the class of persons aggrieved by the alleged unconstitutionality. See, *e.g.*, *People v. Bombacino*, 51 Ill. 2d 17, 20 (1972). According to the State, this principle means that, in this case, before defendant can argue that either of these statutes violates the second amendment, he first must be able to show that he was engaged in conduct that enjoys second amendment protection. Yet there is no way defendant can do this, the State maintains, because defendant himself concedes that the conduct involved in this case, namely, possessing a loaded, defaced, and illegally modified handgun on another person's property without consent, enjoys no such protection. Thus, the State insists, defendant has no standing to bring a second amendment challenge.

¶ 12   We reject the State's argument. The State assumes that defendant is arguing that the enforcement of sections 24-1.6(a)(1), (a)(3)(A) and 24-3.1(a)(1) in this particular case violates his personal right to keep and bear arms, as guaranteed by the second amendment. But that is

---

[1]We also allowed several briefs *amici curiae* to be filed on behalf of both defendant and the State. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

not what defendant is arguing. Rather, he is arguing that sections 24-1.6(a)(1), (a)(3)(A) and 24-3.1(a)(1) *themselves* facially violate the second amendment, and that consequently neither statute can be enforced against *anyone*, defendant included. See, *e.g.*, *People v. Manuel*, 94 Ill. 2d 242, 244-45 (1983) (a defendant cannot be prosecuted under a criminal statute that is unconstitutional in its entirety, as such a statute is void *ab initio*). This is a very different argument from the one the State assumes, and one that defendant undoubtedly has the standing to make. "One has standing to challenge the validity of a statute if he has sustained or if he is in immediate danger of sustaining some direct injury as a result of enforcement of the statute." *People v. Mayberry*, 63 Ill. 2d 1, 8 (1976). Here, sections 24-1.6(a)(1), (a)(3)(A) and 24-3.1(a)(1) were enforced against defendant in the form of a criminal prosecution initiated by the People of the State of Illinois, and the "direct injury" he sustained was the entry of two felony convictions for which he was sentenced to 24 months' probation. If anyone has standing to challenge the validity of these sections, it is defendant. Or to put it another way, if defendant does *not* have standing to challenge the validity of these sections, then no one does. The State's standing objection is rejected.

¶ 13                              Second Amendment
¶ 14                    *Section 24-1.6(a)(1), (a)(3)(A)*
¶ 15        We now turn to the main issue, namely, the constitutionality of the two statutes at issue. We begin with section 24-1.6(a)(1), (a)(3)(A), which states:

> "(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
>
> > (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm; [and]
> >
> > ***
> >
> > (3) One of the following factors is present:
> >
> > > (A) the firearm possessed was uncased, loaded and immediately accessible at the time of the

-4-

offense[.]" 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008).

Statutes are presumed constitutional, and the party challenging the constitutionality of a statute carries the burden of proving that the statute is unconstitutional. *People v. Hollins*, 2012 IL 112754, ¶ 13. Moreover, this court has a duty to construe the statute in a manner that upholds the statute's validity and constitutionality, if it can reasonably be done. *Id*. The constitutionality of a statute is a question of law that we review *de novo*. *Id*.

¶ 16        The second amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court undertook its first-ever "in-depth examination" of the second amendment's meaning. *Id*. at 635. After a lengthy historical discussion, the Court ultimately concluded that the second amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation" (*id*. at 592); that "central to" this right is "the inherent right of self-defense" (*id*. at 628); that "the home" is "where the need for defense of self, family, and property is most acute" (*id*. at 628); and that, "above all other interests," the second amendment elevates "the right of law abiding, responsible citizens to use arms in defense of hearth and home" (*id*. at 635). Based on this understanding, the Court held that a District of Columbia law banning handgun possession in the home violated the second amendment. *Id*. at 635.

¶ 17        Two years later, in *McDonald v. City of Chicago*, 561 U.S. ___, ___, 130 S. Ct. 3020, 3050 (2010), the Supreme Court held that the second amendment right recognized in *Heller* is applicable to the states through the due process clause of the fourteenth amendment. In so holding, the Court reiterated that "the Second Amendment protects the right to keep and bear arms for the purpose of self-defense" (*id*. at ___, 130 S. Ct. at 3026); that "individual self-defense is 'the *central component*' of the Second Amendment right" (emphasis in original) (*id*. at ___, 130 S. Ct. at 3036 (quoting *Heller*, 554 U.S. at 599)); and that "[s]elf-defense is a basic right, recognized by many legal systems from ancient times to the present day" (*id*. at ___, 130 S. Ct. at 3036).

-5-

¶ 18    The issue before us today is whether section 24-1.6(a)(1), (a)(3)(A) violates the second amendment right to keep and bear arms, as construed by the United States Supreme Court in *Heller* and *McDonald*. We are not the first court to consider this question. On the contrary, the constitutionality of section 24-1.6(a)(1), (a)(3)(A) has been considered by several panels of our appellate court. See, *e.g.*, *People v. Moore*, 2013 IL App (1st) 110793; *People v. Montyce H.*, 2011 IL App (1st) 101788; *People v. Mimes*, 2011 IL App (1st) 082747; *People v. Williams*, 405 Ill. App. 3d 958 (2010); *People v. Dawson*, 403 Ill. App. 3d 499 (2010). Uniformly, these courts have held that section 24-1.6(a)(1), (a)(3)(A) passes constitutional muster. According to these decisions, despite their broad and lengthy historical discussions concerning the scope and meaning of the second amendment, neither *Heller* nor *McDonald* expressly recognizes a right to keep and bear arms *outside the home*. Rather, the core holding of both cases is that "the Second Amendment protects the right to possess a handgun *in the home* for the purpose of self-defense." (Emphasis added.) *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3050. And because section 24-1.6(a)(1), (a)(3)(A) prohibits only the possession of operable handguns *outside the home*, it does not run afoul of the second amendment, as presently construed by the United States Supreme Court. See, *e.g.*, *Moore*, 2013 IL App (1st) 110793, ¶¶ 15-18; *Montyce H.*, 2011 IL App (1st) 101788, ¶¶ 27-28; *Dawson*, 403 Ill. App. 3d at 505-10.

¶ 19    In stark contrast to these Illinois decisions stands the Seventh Circuit Court of Appeals' recent decision in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012). In *Moore*, the court held that section 24-1.6(a)(1), (a)(3)(A) is effectively "a flat ban on carrying ready-to-use guns outside the home" (*id.* at 940) and that, as such, it violates the second amendment right to keep and bear arms, as construed in *Heller* and *McDonald* (*id.* at 942). In reaching this result, *Moore* relied not on the specific holding of *Heller*—*i.e.*, that the second amendment protects the right to possess a handgun in the home for the purpose of self-defense—but rather on the broad principles that informed that holding. According to *Moore*, the clear implication of *Heller*'s extensive historical analysis is that "the constitutional right of armed self-defense is broader than the right to have a gun in one's home." *Id.* at 935. *Moore* notes, for example, that "[t]he first sentence

of the *McDonald* opinion states that 'two years ago, in *District of Columbia v. Heller*, we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense.' " *Id*. at 935 (quoting *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3026). Moreover, *Moore* explains that, although both *Heller* and *McDonald* state that the need for self-defense is "most acute" in the home, that "doesn't mean it is not acute outside the home." *Id*. (quoting *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3036, and *Heller*, 554 U.S. at 628). On the contrary:

> "*Heller* repeatedly invokes a broader Second Amendment right than the right to have a gun in one's home, as when it says that the amendment 'guarantee[s] the individual right to possess and carry weapons in case of confrontation.' [Citation.] Confrontations are not limited to the home." *Id.* at 935-36 (quoting *Heller*, 554 U.S. at 592).

Finally, *Moore* notes that the second amendment guarantees not only the right to "keep" arms, but also the right to "bear" arms, and that these rights are not the same:

> "The right to 'bear' as distinct from the right to 'keep' arms is unlikely to refer to the home. To speak of 'bearing' arms within one's home would at all times have been an awkward usage. A right to bear arms thus implies a right to carry a loaded gun outside the home." *Id*. at 936.

In other words, *Moore* concludes, "[t]he Supreme Court has decided that the [second] amendment confers a right to bear arms for self-defense, which is as important outside the home as inside." *Id*. at 942. As a result, *Moore* held that Illinois' "flat ban on carrying ready-to-use guns outside the home," as embodied in section 24-1.6(a)(1), (a)(3)(A), is unconstitutional on its face. *Id* at 940.[2]

¶ 20    After reviewing these two lines of authority—the Illinois cases holding that section 24-1.6(a)(1), (a)(3)(A) is constitutional, and the Seventh Circuit's decision holding that it is not—we are convinced that the Seventh Circuit's analysis is the correct one. As the Seventh Circuit correctly noted, neither *Heller* nor *McDonald* expressly limits the second amendment's protections to the home. On the contrary,

---

[2]The State of Illinois did not appeal from the decision in *Moore*.

both decisions contain language strongly suggesting if not outright confirming that the second amendment right to keep and bear arms extends beyond the home. Moreover, if *Heller* means what it says, and "individual self-defense" is indeed "the central component" of the second amendment right to keep and bear arms (*Heller*, 554 U.S. at 599), then it would make little sense to restrict that right to the home, as "[c]onfrontations are not limited to the home." *Moore*, 702 F.3d at 935-36. Indeed, *Heller* itself recognizes as much when it states that "the right to have arms *** was by the time of the founding understood to be an individual right protecting against both *public* and private violence." (Emphasis added.) *Heller*, 554 U.S. at 593-94.

¶ 21　　Of course, in concluding that the second amendment protects the right to possess and use a firearm for self-defense outside the home, we are in no way saying that such a right is unlimited or is not subject to meaningful regulation. See *infra* ¶¶ 26-27. That said, we cannot escape the reality that, in this case, we are dealing not with a reasonable regulation but with a comprehensive ban. Again, in the form presently before us, section 24-1.6(a)(1), (a)(3)(A) categorically prohibits the possession and use of an operable firearm for self-defense outside the home. In other words, section 24-1.6(a)(1), (a)(3)(A) amounts to a wholesale statutory ban on the exercise of a personal right that is specifically named in and guaranteed by the United States Constitution, as construed by the United States Supreme Court. In no other context would we permit this, and we will not permit it here either.

¶ 22　　Accordingly, as the Seventh Circuit did in *Moore*, we here hold that, on its face, section 24-1.6(a)(1), (a)(3)(A) violates the right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution. Defendant's conviction under that section therefore is reversed.[3]

---

[3]Following the decision in *Moore*, the General Assembly enacted the Firearm Concealed Carry Act, which *inter alia* amended the AUUW statute to allow for a limited right to carry certain firearms in public. See Pub. Act 98-0063 (eff. July 9, 2013), Neither the Firearm Concealed Carry Act nor the amended AUUW statute is at issue in this case.

¶ 24    Defendant also argues that this court should reverse his UPF conviction because, like section 24-1.6(a)(1), (a)(3)(A), the statute upon which his UPF conviction is based violates the second amendment.

¶ 25    Defendant, who was 17 years old at the time of the offenses charged in this case, was convicted of violating section 24-3.1(a)(1) of the Criminal Code of 1961, which provides:

> "A person commits the offense of unlawful possession of firearms or firearm ammunition when:
>
>> (1) He is under 18 years of age and has in his possession any firearm of a size which may be concealed upon the person[.]" 720 ILCS 5/24-3.1(a)(1) (West 2008).[4]

According to defendant, at the time the second amendment was drafted and ratified, the right to keep and bear arms extended to persons 16 and 17 years of age. In support, defendant relies principally on the fact that, at the time of this nation's founding, many colonies "required those as young as 15 years old to bear arms" for purposes of militia service. Consequently, defendant argues, "because Illinois' ban on handgun possession by 17-year-olds regulates conduct that traditionally falls within the protection of the second amendment, the validity of the law depends upon the government's ability to satisfy heightened constitutional scrutiny." Defendant then insists that the State cannot meet this burden because "Illinois' unconditional abrogation of a 17-year-old's constitutional right to defend himself with a handgun" is in no way tailored to meet any identifiable state interest. In other words, defendant is arguing that, as far as the second amendment is concerned, a 17-year-old minor is on exactly the same constitutional footing as a full-fledged adult.

---

[4]Section 24-3.1(c) of the UPF statute contains an express exception for persons under the age 18 who are "participating in any lawful recreational activity with a firearm such as, but not limited to, practice shooting at targets upon established public or private target ranges or hunting, trapping, or fishing in accordance with the Wildlife Code or the Fish and Aquatic Life Code." 720 ILCS 5/24-3.1(c) (West 2008).

¶ 26 　　We reject this argument. In *Heller*, the Supreme Court expressly stated that:

> "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626.

From there, the Court went on to emphasize that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 626-27. The Court then immediately added, by way of footnote, that "[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 627 n.26.

¶ 27 　　Now admittedly, the list enumerated in *Heller* does not specifically include laws prohibiting the possession of firearms by minors. Nevertheless, several courts have since undertaken a thorough historical examination of such laws, and all of them have concluded that, contrary to defendant's contention, the possession of handguns by minors is conduct that falls outside the scope of the second amendment's protection. See, *e.g.*, *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, Explosives*, 700 F.3d 185, 204 (5th Cir. 2012) (concluding that "[m]odern restrictions on the ability of persons under 21 to purchase handguns—and the ability of persons under 18 to possess handguns—seem, to us, to be firmly historically rooted"); *United States v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009) (concluding that the "right to keep arms in the founding period did not extend to juveniles"); *Powell v. Tompkins*, No. 12-10744-WGY, 2013 WL 765339, at *16 (D. Mass Feb. 28, 2013) (holding that a Massachusetts law proscribing the carry of firearms by persons under the age of 21 "comports with the Second Amendment and imposes no burden on" the right to keep and bear arms). In essence, these cases explain that, although many colonies *permitted* or even *required* minors to own and possess firearms for purposes of militia service, nothing like *a*

*right* for minors to own and possess firearms has existed at any time in this nation's history. On the contrary, laws banning the juvenile possession of firearms have been commonplace for almost 150 years and both reflect and comport with a "longstanding practice of prohibiting certain classes of individuals from possessing firearms—those whose possession poses a particular danger to the public." *Rene*, 583 F.3d at 15. We will not repeat or rehash the historical evidence set forth in these decisions. Rather, for present purposes, we need only express our agreement with the obvious and undeniable conclusion that the possession of handguns by minors is conduct that falls outside the scope of the second amendment's protection.

¶ 28 For these reasons, we reject defendant's second amendment challenge to section 24-3.1(a)(1) and affirm his conviction thereunder.

¶ 29 CONCLUSION

¶ 30 For the reasons set forth above, we reverse defendant's conviction under section 24-1.6(a)(1), (a)(3)(A), affirm defendant's conviction under section 24-3.1(a)(1), and remand to the trial court for imposition of sentence on the UPF conviction. The sentence imposed on the UPF conviction shall not exceed the sentence imposed on the AUUW conviction, and defendant shall receive credit for time already served on the AUUW conviction.

¶ 31 Affirmed in part, reversed in part, and remanded.